**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS, | |
| Plaintiff, | |
| v. | Case No. 19-cv-3461 |
| WILLIAM P. BARR, in his official capacity as Attorney General of the United States, | |
| Defendant. | |

## COMPLAINT

The State of Illinois ("the State"), by KWAME RAOUL, the Attorney General of the State of Illinois, brings this action to enjoin Defendant, the Attorney General of the United States, from unlawfully withholding essential federal funding for Illinois law enforcement agencies and criminal justice initiatives. Despite rulings by this Court (Leinenweber, J.) permanently enjoining multiple unlawful immigration-related conditions on 2017 Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") funding, Defendant has sought to impose these same illegal conditions on 2018 Byrne JAG funding for the State. Like the conditions that came before, the 2018 conditions are outside the scope of Defendant's authority, violate the Tenth Amendment and Spending Clause of the Constitution, and violate the Administrative Procedure Act. The State seeks to enjoin the conditions as well as a declaration that the conditions are illegal and that the State complies with federal law.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves a civil action arising under the Constitution and laws of the United States. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1346 because it is against the federal

government and founded upon the Constitution and federal law. The Court is authorized to issue the relief sought here under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Administrative Procedure Act (APA), 28 U.S.C. §§ 702, 705, and 706, and the Mandamus Statute, 28 U.S.C. § 1361.

2.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the State's claims occurred there, the State maintains offices there, and no real property is involved in this action.

## PARTIES

3.      The State brings this action on its own behalf to protect its proprietary interests. The State also brings this action on behalf of the people of Illinois by and through Kwame Raoul, Attorney General of the State of Illinois, pursuant to his authority under the doctrine of *parens patriae* and in his capacity as the State's chief law enforcement officer.

4.      Defendant William P. Barr is the Attorney General of the United States and is sued in his official capacity as the federal official in charge of the United States Department of Justice ("DOJ"), which administers the federal funding at issue in this case through the Bureau of Justice Assistance ("BJA") of the Office of Justice Programs ("OJP").

5.      The State brings this action because Defendant's unconstitutional and unlawful actions threaten the State's proprietary interests in the form of millions of dollars of funds that Congress appropriated for the direct benefit of the State, its law enforcement, and its residents. Defendant is required by statute to distribute these funds to the State pursuant to a strict formula. *See* 34 U.S.C. § 10156(a). Under this formula, the State is entitled to an allocation of $6,575,575

in Byrne JAG funds for FY 2018.[1] Without the injunctive relief that the State seeks, Illinois will have to choose whether and to what extent to reduce funding for critical law enforcement initiatives and criminal justice research.

6.      Illinois Attorney General Raoul possesses *parens patriae* authority to commence this action for violations of federal law because this case implicates the State's interest in the health and well-being of Illinois residents. The State has a quasi-sovereign interest in the prevention of present and future harm to its residents, including those who receive assistance and protection by Illinois law enforcement entities that are lawfully entitled to receive the Byrne JAG funding at issue. The Illinois Attorney General also has *parens patriae* authority to pursue legal actions that ensure the State and its residents are not excluded from receiving benefits that flow from full and equal participation in the federal system. Defendant's violations of the Constitution and federal law affect a substantial segment of the State's residents, including direct victims and other members of the public who suffer indirect effects of Defendant's unlawful actions.

7.      The Illinois Attorney General is uniquely situated in his capacity as the State's chief law enforcement officer to seek declaratory and injunctive relief protecting the rights of law enforcement entities across Illinois as well as Illinois residents they protect and serve. Defendant has identified the Illinois Attorney General as the officer required to certify the State's compliance with multiple unconstitutional requirements. Such a certification would harm the Illinois Attorney General in his performance of his duties as chief law enforcement officer. In addition, Defendant's actions aggrieve the State because the challenged actions impinge on the State's sovereignty: the

---

[1] *See* Fiscal Year (FY) 2018 State Edward Byrne Memorial Justice Assistance Grant (JAG) Allocations, UNITED STATES DEPARTMENT OF JUSTICE BUREAU OF JUSTICE ASSISTANCE, https://www.bja.gov/funding/18jagstateallocations.pdf (last visited May 23, 2019).

unconstitutional and unlawful conditions on the State's 2018 Byrne JAG funds impair the State's ability to exercise its police power in a manner it deems necessary to protect the public.

## FACTUAL ALLEGATIONS

### I.    The Byrne JAG Program

8.      Federal statute entitles the State to receive funds each year from the Byrne JAG program, a partnership between federal, state, and local governments that promotes innovative and evidence-based solutions to prevent crime and improve the justice system. State and local governments can use Byrne JAG funds to provide additional police personnel, equipment, and training; to develop drug treatment and enforcement programs; and to support crime victims and witnesses, among many other functions. The wide variety of law enforcement opportunities made possible through Byrne JAG reflects Congress's specific intent "to give State and local governments more flexibility to spend money for programs that work for them rather than to impose a 'one size fits all' solution." H.R. Rep. No. 109-233, at 89 (2005).

9.      Byrne JAG is a formula grant administered by Defendant, who "shall" allocate all congressionally appropriated funds to each State according to a prescribed methodology. *See* 34 U.S.C. §§ 10156(a), (b), (c). The State may retain some of these funds for itself, *see id.* § 10156(c)(1), and must disburse the rest to its local governments, *see id.* § 10156(c)(2). Federal law entitles the State to receive Byrne JAG funds so long as the State proposes to use them to achieve one of eight criminal justice goals articulated in the authorizing statute. *See id.* § 10152(a)(1).

4

10.    The State has long satisfied this statutory standard. Illinois has received Byrne JAG funds every year from the program's creation in 2005[2] until Defendant imposed immigration-related conditions on Byrne JAG funds in 2017 and 2018. These funds have allowed the State to achieve extraordinary successes.

11.    For example, the Illinois Center of Excellence for Behavioral Health and Justice, based in Winnebago County, is featured on Defendant's OJP website as a Byrne JAG "success story."[3] The Center plays a crucial role in implementing Illinois's novel "problem-solving courts," which offer services to offenders who are battling issues of mental health or substance abuse. By diverting these offenders from prison and treating their underlying challenges, problem-solving courts have the potential to reduce recidivism and the costs of incarceration—but only if implemented properly. Over the past six years, and with the assistance of Byrne JAG funds, the Center has trained professionals from each of the State's 102 counties to implement best practices for problem-solving courts. The Center's work to improve the criminal justice system benefits communities across the State.

12.    The State of Illinois's Multi-Jurisdictional Drug Task Forces are also Byrne JAG funding beneficiaries. These Drug Task Forces, designed particularly to combat narcotics distribution and trafficking, are formed by law enforcement agencies who agree to pool their resources across municipal and county lines. Currently, the Drug Task Forces serve 62 Illinois counties that span the entire State. A recent study found that these Drug Task Forces, in collaboration with community stakeholders, made proportionately more drug arrests carrying more

---

[2] *Edward Byrne Memorial Justice Grant*, ILLINOIS CRIMINAL JUSTICE INFORMATION AUTHORITY (last visited May 23, 2019), https://bit.ly/2L8K5fl.
[3] *BJA-Funded Program Supports Problem-Solving Courts Across Illinois*, U.S. DEPARTMENT OF JUSTICE BUREAU OF JUSTICE ASSISTANCE (June 15, 2018), https://bit.ly/2u9WBV5.

serious felony and manufacture/delivery charges than their local police counterparts.[4] And these Drug Task Forces are on the front lines as the State combats the tragic opioid crisis that is devastating Illinois families.

13.     The Cook County Human Trafficking Task Force provides yet another example of an innovative and evidence-based initiative that benefits Illinois residents and is made possible by Byrne JAG funds. The Task Force is a collaboration between the Cook County State's Attorney's Office, the U.S. Attorney's Office for the Northern District of Illinois, and the Salvation Army STOP-IT Program—assisted by a diverse steering committee of more than 25 law enforcement and social service agencies. The goal of the Task Force is to implement a systemic collaboration between law enforcement and service providers towards the common goal of combating human trafficking in Illinois's largest county, and to provide comprehensive, high-quality social services to all victims of human trafficking. As a result of their collaboration, through December 2018 county prosecutors have charged 172 defendants in 131 indictments, federal prosecutors have charged 48 traffickers in 33 federal cases, and service providers have reached 272 victims.[5]

14.     These criminal justice programs illustrate a common thread reflected in similar efforts throughout the State. Byrne JAG funds allow Illinois law enforcement officers to respond to pressing community needs using data-driven, results-oriented techniques. They promote partnerships between federal, state, and local agencies to address shared enforcement responsibilities. They help to ensure that the State's criminal justice systems operate efficiently and effectively. Illinois residents are safer because of Byrne JAG funds.

---

[4] Jessica Reichert *et al.*, Evaluation of Illinois Multi-Jurisdictional Drug Task Forces, ILLINOIS CRIMINAL JUSTICE INFORMATION AUTHORITY (Dec. 6, 2017), https://bit.ly/2L2pJY8.
[5] *About the Cook County Human Trafficking Task Force*, COOK COUNTY HUMAN TRAFFICKING TASK FORCE, https://www.cookcountytaskforce.org/about-us.html (last visited May 23, 2019).

**II.    Defendant's First Attempt to Impose Unlawful Conditions on Byrne JAG Recipients.**

**A.    The State Applies for 2017 Byrne JAG Funds.**

15.    On July 25, 2017, Defendant announced that he was seeking state and municipal applications for FY 2017 Byrne JAG funds. In solicitation documents, Defendant through BJA[6] imposed three unlawful, immigration-related conditions requirements on every state and municipality that receives FY 2017 Byrne JAG funds. As formally stated in an award notice that Defendant sent to the State, those conditions were:

a.    *The "Compliance" condition.* "In order to validly accept" an award of 2017 Byrne JAG funds, the State was required to submit a "Certification of Compliance with 8 U.S.C. 1373" form, executed by the State's chief legal officer (for Illinois, the Attorney General) under penalty of perjury. In addition, Defendant required the State to comply with Section 1373 on an ongoing basis, including refraining from restricting government entities and officials from exchanging citizenship or immigration status information with the Department of Homeland Security (DHS);

b.    *The "Access" condition.* Under a section entitled "Required State-level rules or practices related to aliens," Defendant required that the State have a statute, rule, regulation, policy, or practice "in place that is designed to ensure that agents of the United States … are given to [*sic*] access any State (or State-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States"; and

---

[6] At all times relevant to this Complaint, Defendant acted through Defendant's agencies OJP and/or BJA.

c. *The "Notice" condition.* Also under the "Required State-level rules or practices" section, a requirement that the State adopt a statute or policy "to ensure that, when a State (or State-contracted) correctional facility receives from DHS a formal written request … that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and – as early as practicable … provide the requested notice to DHS." The condition defined "as early as practicable" to mean "at least 48 hours [in advance], if possible."

16.     The Illinois Criminal Justice Information Authority (ICJIA), the entity of the State's government charged by Illinois law with applying for criminal justice funds from the United States, *see* 20 ILCS 3930/7(k), timely responded to Defendant's solicitation by the deadline of August 25, 2017. ICJIA's application proposed to use Byrne JAG funds to achieve the criminal justice goals articulated in the authorizing statute, *see* 34 U.S.C. § 10152(a)(1), and satisfied all other lawfully imposed requirements.

17.     Rather than awarding 2017 Byrne JAG funds to ICJIA, Defendant responded to ICJIA's application with a letter claiming in conclusory fashion that the Illinois TRUST Act, 5 ILCS 805/1 *et seq.*, effective on August 28, 2017, conflicted with 8 U.S.C. § 1373.

**B.     The Illinois TRUST Act Protects Relationships Between Communities and Police in Compliance with Federal Law.**

18.     The Illinois TRUST Act "[r]ecogniz[es] that State law does not currently grant State or local law enforcement the authority to enforce federal civil immigration laws." 5 ILCS 805/5. To that end, the statute prohibits law enforcement agencies and officials from complying with immigration detainers and non-judicial immigration warrants, which are requests issued by immigration agents to law enforcement officials concerning the release and custody of individuals.

8

5 ILCS 805/10, 5 ILCS 805/15(a). Such detainers or warrants includes a request to a law enforcement agency to maintain custody or provide notice of release of a person. 5 ILCS 805/10.

19.    In addition, the TRUST Act contains two savings clauses that protect all communications between local law enforcement and federal immigration authorities. First, Section 5 states that the "Act shall not be construed to prohibit or restrict any entity from sending to, or receiving from, the United States Department of Homeland Security or other federal, State, or local government entity information regarding the citizenship or immigration status of any individual under Sections 1373 and 1644 of Title 8 of the United States Code." The second states that "[n]othing in this Section 15 prohibits communication between federal agencies or officials and law enforcement agencies or officials." 5 ILCS 805/15(c).

### C.    Defendant Questions the Legality of the Illinois TRUST Act.

20.    Instead of responding directly to ICJIA's 2017 Byrne JAG application, on November 15, 2017, Defendant sent ICJIA a letter concerning the State's compliance with 8 U.S.C. § 1373. According to the letter, "[t]he Department of Justice is concerned that" the TRUST Act "appears to restrict the sending of information regarding immigration status, in violation of section 1373(a)."

21.    The letter lacked any explanation as to why the TRUST Act "appears to restrict the sending of information" about immigration status in violation of 8 U.S.C. § 1373(a). In response, ICJIA described the Illinois TRUST Act's savings clauses and explained that "[t]hese provisions are interpreted in accordance with their plain meaning. Thus, the [Illinois TRUST Act] does not restrict Illinois officers or employees from sending information regarding the immigration status of any individual." As a result, ICJIA's executive director concluded, there is no conflict between

Illinois law and 8 U.S.C. § 1373, and ICJIA had complied with Section 1373 throughout FY 2016 and would do so in FY 2017.

22.     Defendant was not satisfied. "After reviewing your response," a BJA official responded to ICJIA's executive director, "the Department remains concerned that your jurisdiction's laws, policies, or practices may violate section 1373, or, at a minimum, that they may be interpreted or applied in a manner inconsistent with section 1373." Without explaining further, the official then requested that ICJIA produce all "orders, directives, instructions, or guidance to your law enforcement employees" regarding communications with federal immigration officials. ICJIA complied, yet it did not receive any further response from Defendant—such as a letter awarding 2017 Byrne JAG funds.

### D.     The State Sues to Obtain 2017 Byrne JAG Funds.

23.     As the State continued to await a response from Defendant, other entities such as the City of Chicago sought legal relief from Defendant's imposition of the conditions on 2017 Byrne JAG funds. In April 2018, the Seventh Circuit affirmed this Court's earlier ruling that Defendant lacked authority to impose the notice and access conditions. *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018). In July 2018, this Court (Leinenweber, J.) held that Defendant also lacked authority to impose the condition requiring certification of compliance with 8 U.S.C. § 1373, as that law "impermissibly directs the functioning of local government in contravention of Tenth Amendment principles" and "is thus unconstitutional on its face." *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 872 (N.D. Ill. 2018).

24.     After receiving no further notification from Defendant concerning the 2017 Byrne JAG funds to which it was entitled by statute, the State in July 2018 filed suit in this Court seeking injunctive and declaratory relief against the unlawful conditions on the funds. In September 2018,

Defendant agreed to stipulate to a permanent injunction and final judgment on two counts of the State's complaint for the reasons the Court set forth in *City of Chicago v. Sessions*. *See* Stipulation Regarding Plaintiff's Motion for Partial Summary Judgment, *Illinois v. Sessions*, No. 1:18-cv-4791 (Sept. 25, 2018), ECF No. 24.

25.     The Court proceeded to enter a permanent injunction precluding Defendant from enforcing the 2017 Notice, Access, and Compliance conditions as to any FY 2017 Byrne JAG grant issued to the State of Illinois. Order, *Illinois v. Sessions*, No. 1:18-cv-4791 (Sept. 26, 2018), ECF No. 25. That injunction is currently on appeal, though the Seventh Circuit has held the appeal in abeyance pending that court's resolution of Defendant's earlier appeal in the *City of Chicago* case, which remains pending.

26.     In October 2018, ICJIA received notice from Defendant that Illinois had been awarded 2017 Byrne JAG funds. ICJIA proceeded to submit acceptance materials to Defendant, and received its 2017 Byrne JAG funds in January 2019. At no point, however, did Defendant ever respond to ICJIA's correspondence demonstrating that the Illinois TRUST Act avoids any violation of 8 U.S.C. § 1373. That remains the case to this day.

## III.     Defendant Seeks to Impose Conditions on 2018 Byrne JAG Funds.

### A.     Defendant Imposes the Same Illegal Conditions on 2018 Byrne JAG Funds and Adds Additional Immigration-Related Requirements.

27.     On July 20, 2018, Defendant released the FY 2018 State Solicitation for Byrne JAG funds. Under the heading "Statutory and Regulatory Requirements; Award Conditions," Defendant informed potential grant recipients that they will likely have to comply with certain requirements in order to obtain 2018 Byrne JAG funding.

28.     After ICJIA applied for 2018 Byrne JAG funds, it received a letter and award report from Defendant on November 20, 2018. Defendant noted that it had approved ICJIA's application

for the funds and attached grant award and special conditions documents. The grant award indicates that ICJIA is poised to receive $6,575,575 from Defendant. However, as with the 2017 Byrne JAG award, the State is required to comply with certain special conditions related to immigration enforcement—four of which impose the exact same requirements as in the 2017 Byrne JAG award:

29.     *The 1373 Compliance condition.* The 2018 Byrne JAG award report requires ICJIA to submit a form executed by the chief legal officer of Illinois. On the form, the chief legal officer (in Illinois's case, the Attorney General) must certify under penalty of perjury and with acknowledgement that a false statement may be the subject of criminal prosecution that the "program or activity to be funded" is not subject to prohibitions or restrictions affecting compliance with 8 U.S.C. § 1373(a) or (b). And as with the 2017 Byrne JAG award, the State is required to exhibit "ongoing compliance" with Section 1373; the 2018 award report includes verbatim language from the 2017 award report forbidding the State from restricting government communications with DHS about citizenship or immigration status.

30.     *The 1644 Compliance condition.* On the same form described above with relation to the 1373 Compliance condition, the chief legal officer of Illinois must also certify under penalty of perjury and threat of criminal prosecution that the "program or activity to be funded" is not subject to prohibitions or restrictions affecting compliance with 8 U.S.C. § 1644. Section 1644 is functionally identical to 8 U.S.C. § 1373(b)(1); both provisions prohibit any restrictions on federal, state, or local government entities from sending or requesting information regarding the immigration status of any individual to or from the Immigration and Naturalization Service.

31.     *The Access condition.* The award also requires the allowance of "access to any State or local government (or government-contracted) correctional facility" by "agents of the United

12

States acting under color of federal law" whose purpose is to "interrogat[e] any alien or person believed to be an alien as to his [or her] right to be or to remain in the United States." To that end, the State may not "imped[e] access" to any correctional facility under its control to such agents. Although this condition cites in justification a federal statute and regulation (8 U.S.C. § 1357(a) and 8 C.F.R. § 287.5(a)), it imposes the same elements on the State as the 2017 Byrne JAG award report—which required the State to "ensure" that federal agents "are given access" to any local government correctional facility so they may "meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States."

32.     *The Notice condition.* Here, Illinois entities, agencies, and officials must not "interfere with the 'removal' process by failing to provide—as early as practicable … —advance notice to DHS of the scheduled release date and time for a particular alien, if a State or local government (or government-contracted) correctional facility receives from DHS a formal written request pursuant to the [Immigration and Nationality Act] that seeks such advance notice." The condition goes on to define "as early as practicable" as "at least 48 hours [in advance], if possible," the same terms used in the 2017 Byrne JAG award notice. That document required the State to "ensure that" the State's correctional facilities "will honor" any request from DHS for "advance notice of the scheduled release date and time for a particular alien in such facility … as early as practicable."

33.     In addition to re-imposing these conditions on Illinois despite having been found by this Court and others to have no power to do so, Defendant added new immigration-related conditions to the State's obligations under the 2018 Byrne JAG program:

13

34. *The Harboring condition.* Based on 8 U.S.C. § 1324(a), which concerns "harboring certain aliens," this provision forbids the "public disclosure … of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection any fugitive from justice under 18 U.S.C. ch. 49, or any alien who has come to, entered, or remains in the United States in violation of 8 U.S.C. ch. 12." This condition defines "federal law enforcement information" as "records or information compiled for any law enforcement purpose" that is made available to a state or local government entity, agency, or official "through any means." The condition does not define the terms "records" or "information."

35. *The Information Collection condition.* The award conditions that ICJIA received also require the collection and maintenance of information from any "proposed subrecipient" of Byrne JAG funds concerning "Communication with the Department of Homeland Security (DHS) and/or Immigration and Customs Enforcement (ICE)." The 2018 Byrne JAG solicitation details the information to be acquired, which includes whether the proposed subrecipient has "any laws, policies, or practices related to" communication with DHS and ICE and whether "a superior political entity" has any such laws to which the entity is subject. The proposed subrecipient must also provide a copy of any such law or policy, a description of same, and an explanation of how the law or policy complies with 8 U.S.C. § 1373. Any such information "must be made available to DOJ upon request" by ICJIA. The State "may not make a subaward" to any entity without obtaining and maintaining this information, according to the award conditions.

**B.      Defendant Announces Absolute Discretion to Enforce the Immigration-Related Conditions, Confirming That the State Cannot Accept Its 2018 Award.**

36. In addition to requiring the State to comply with these conditions, Defendant has posted "JAG Award Special Notices" ("Special Notices") on Defendant's Byrne JAG website that

14

concern some (but not all) of the immigration-related conditions Defendant is imposing on the State's 2018 Byrne JAG award.[7] The Special Notices portray Defendant as threatening to enforce those conditions against the State at Defendant's discretion should certain unnamed litigation not go Defendant's way.

37.     Under the heading "Special Notice Re: FY 2018 Byrne JAG award conditions," Defendant singled out the State along with the State of California and the cities of Philadelphia and Chicago to announce that "DOJ's authority to require compliance" with the Notice, Access, 1373 Compliance, 1644 Compliance, and Information Collection conditions "is the subject of pending litigation." (Each of the named jurisdictions has sued Defendant over the Notice, Access, and Compliance conditions, though not the Information Collection condition.) Accordingly, Defendant "has determined that, at this time, it will not use or enforce those conditions in FY 2018 JAG awards to these jurisdictions." In addition, Defendant informed the State that it need not complete certification forms attesting under penalty of perjury to the State's compliance with the various immigration statutes Defendant cited as the basis for the immigration-related conditions.

38.     However, Defendant went on to state the following: "If the posture of the pending litigation changes (or if the pending litigation is resolved) in a manner *such that DOJ decides to use or enforce any or all*" of the 2017 immigration-related conditions, "then DOJ will provide [Illinois and the other jurisdictions] with specific, formal, written notice of DOJ's intent to use or enforce those conditions following the notice." Defendant did not specify which "changes" in the "manner" of any such litigation might prompt Defendant to "decide[ ] to use or enforce any or all"

---

[7] *See* FY 2017 and FY 2018 JAG Award Special Notices, BJA EDWARD BYRNE MEMORIAL JUSTICE ASSISTANCE GRANT PROGRAM, https://www.bja.gov/jag/award-conditions.html (last visited May 23, 2019).

of the immigration-related conditions it named. In addition, Defendant's notice did not mention the Harboring condition.

39.     Because of the immigration-related conditions in the 2018 Byrne JAG award materials as well as the Special Notice threatening enforcement of certain conditions at a time of Defendant's choosing, Illinois cannot accept the funds already granted by Congress under the 2018 Byrne JAG program. Through a page on its website, Defendant has purported to suspend most of the conditions (though not all) only until it wishes to impose them again—and Defendant's sole communications on record to date with the State about the Illinois TRUST Act indicate that Defendant does not believe the State complies with these conditions. So long as the State maintains the TRUST Act, Defendant is poised to withhold critical funding for Illinois law enforcement through its insistence on the immigration-related conditions, leaving the State and its law enforcement entities mired in uncertainty. Defendant's position is contrary to law.

## IV.     Defendant Lacks the Authority to Impose any of the Illegal Immigration-Related Conditions on the State's Acceptance of 2018 Byrne JAG Funds.

### A.     The Notice, Access, 1373 Compliance, and 1644 Compliance Conditions Remain Illegal.

40.     As this Court and several others have concluded, the Notice, Access, 1373 Compliance, and 1644 Compliance conditions are beyond the scope of Defendant's authority. And as multiple courts have found, the Notice, Access, and 1373 Compliance conditions that Defendant has attached to 2018 Byrne JAG funds are functionally identical to those that courts have already ruled against and enjoined. In spite of the courts' unanimous rejection of these 2017 Byrne JAG conditions as illegal, Defendant nonetheless has maintained them for 2018 funds and threatens to enforce them to this day. They must be enjoined.

41.     This Court's conclusion in Chicago's suit against the Notice, Access, and 1373 Compliance conditions on 2017 Byrne JAG funds could not have been clearer. *See City of Chicago v. Sessions*, 321 F. Supp. 3d 855 (N.D. Ill. 2018). First, the Court concluded that Section 1373, upon which the 1373 Compliance condition is based, violates the Tenth Amendment on its face because it "impermissibly directs the functioning of local government" for a host of reasons. *Id.* at 872. The Court then ruled that the Notice and Access conditions are *ultra vires* and violate the separation of powers, citing the Seventh Circuit's decision that Defendant lacks the authority to impose conditions requiring state or local governments to assist in immigration enforcement. *Id.* at 874 (citing *City of Chicago v. Sessions*, 888 F.3d 272, 284 (7th Cir. 2018), *en banc reh'g granted on other grounds, vacated in part by* Order, No. 17-2991 (7th Cir. June 4, 2018), Dkt. No. 128). Finally, this Court held that Defendant was likewise without authority to impose the 1373 Compliance condition because Section 1373 does not qualify as a law applicable to the Byrne JAG program because of its unconstitutionality. *Id.* at 874–76. The Court proceeded to grant a permanent injunction against Defendant's ability to enforce the Notice, Access, and 1373 Compliance conditions. *Id.* at 876–82.

42.     As noted above, this Court is not alone in deciding that the Notice, Access, and 1373 Compliance conditions on 2017 Byrne JAG funding were invalid. Multiple federal courts have adopted all or parts of this Court's reasoning. *See, e.g.*, *City of Philadelphia v. Attorney General*, No. 18-2648, 2019 WL 638931 (3d Cir. Feb. 15, 2019) (holding that Defendant exceeded his statutory authority in imposing the Notice, Access, and 1373 Compliance conditions); *New York v. Dep't of Justice*, 343 F. Supp. 3d 213 (S.D.N.Y. 2018) (concluding that these conditions are *ultra vires* and violate the separation of powers, are arbitrary and capricious under the APA, and that Section 1373 is facially unconstitutional); *City & County of San Francisco v. Sessions*,

349 F. Supp. 3d 924 (N.D. Cal. 2018) (holding that the Notice, Access, and 1373 Compliance conditions violate the separation of powers and the Spending Clause and are arbitrary and capricious under the APA, and finding that Section 1373 is facially unconstitutional).

43.     The Notice, Access, 1373 Compliance, and 1644 Compliance conditions attached to the State's potential acceptance of 2018 Byrne JAG funds are functionally the same as those that courts unanimously concluded were illegal when attached to 2017 Byrne JAG funds. They require the same conduct by the State, and are barred for the same reasons that this Court and several others have stated: they are beyond Defendant's authority and violate the Spending Clause, the anti-commandeering principle of the Tenth Amendment, and the Administrative Procedure Act.

44.     Despite first appearing in the 2018 Byrne JAG conditions, the unconstitutionality of the 1644 Compliance condition is already settled. Because 8 U.S.C. § 1644 is a near-verbatim replica of language and is substantively identical in function to the unconstitutional command of 8 U.S.C. § 1373(b)(1), Section 1644 is also unconstitutional and cannot serve as the basis for any condition Defendant wishes to impose on the State's 2018 Byrne JAG funds.

**B.      The Harboring and Information Collection Conditions Are Beyond Defendant's Authority.**

45.     For similar reasons, Defendant cannot impose the Harboring condition on the State as a requirement of the 2018 Byrne JAG award. Nothing in the statutes promulgating the Byrne JAG program or OJP permits Defendant to impose the Harboring condition, which by its terms does not apply to governmental entities. And the Harboring condition can easily be construed as an affirmative command to authorities in Illinois to cease comment on operations of federal immigration authorities. Such a command is unrelated to the federal interest in the Byrne JAG

program—which is to make grants to provide support for state and local government programs, including state and local law enforcement. 34 U.S.C. § 10152(a)(1).

### 1. Defendant's Imposition of the Harboring and Information Collection Conditions Is *Ultra Vires*.

46. Defendant's power to impose the Harboring condition is not authorized anywhere in the Byrne JAG statute, nor in the statute that created OJP. The OJP statute requires the agency to "be headed by an Assistant Attorney General," 34 U.S.C. § 10101, who shall "maintain liaison with the executive and judicial branches of the Federal and State governments in matters relating to criminal justice." 34 U.S.C. § 10102(a)(2). This responsibility and the others listed in this section merely "address the communication and coordination duties of the Assistant Attorney General," not any power to impose conditions on grants. *City of Chicago v. Sessions*, 888 F.3d at 285. Indeed, "[i]t is too great a leap to conclude that because Congress imposed an obligation on the DOJ to 'maintain liaison,' or maintain a close connection to 'Federal and State governments in matters relating to criminal justice,' that it was intending to grant the DOJ broad authority to impose the challenged conditions over states and local governments receiving funds." *City and County of San Francisco v. Sessions*, No. 3:18-cv-5146, 2019 WL 1024404, at *9 (N.D. Cal. Mar. 4, 2019). Any suggestion that the Harboring condition furthers Defendant's duty to "maintain liaison" with the State and its law enforcement entities defies logic, as the condition enables Defendant to cut off funds to the State's law enforcement entities—not communicate with them.

47. Nor is authority to impose the Harboring condition located elsewhere in the same statute. Defendant has argued that the statute conveys the obligation for the Assistant Attorney General to "exercise such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on all grants, and determining priority purposes for formula grants," 34 U.S.C.

§ 10102(a)(6). Yet the Seventh Circuit has already rejected any argument that this provision permits Defendant "to impose any conditions he or she sees fit" as "contrary to the plain meaning of the statutory language." *City of Chicago v. Sessions*, 888 F.3d at 284. The problem is with the phrase "such other powers and functions as may be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General, including . . . ." As the Seventh Circuit observed, authority to impose conditions on grants "is not otherwise provided in the chapter and is not possessed by the Attorney General." *Id.* at 285. Thus the Attorney General cannot delegate any such power to the Assistant Attorney General at OJP. Further, given that 34 U.S.C. § 10102(a) generally addresses "communication and coordination duties," that subsection "would be an odd place indeed to put a sweeping power to impose *any* conditions on *any* grants—a power much more significant than all of the duties and powers that precede it in the listing, and a power granted to the Assistant Attorney General that was not granted to the Attorney General." *Id.* Finally, divining such a power from Section 10102(a)(6) "is inconsistent with the goal of the [Byrne JAG] statute to support the needs of law enforcement while providing flexibility to state and local governments" and "is at odds with the nature of the Byrne JAG grant, which is a formula grant rather than a discretionary grant." *Id.*

48.     The Information Collection condition also falls outside the scope of Defendant's authority. The condition is premised entirely upon requiring the State to question its Byrne JAG subrecipients about their compliance with 8 U.S.C. § 1373, including requiring subrecipients to turn over copies of their laws and explain why they don't violate Section 1373. That statute has already been held unconstitutional by this Court and others, leaving Defendant without authority to impose another condition based on Section 1373 on the State.

##### 2. Defendant's Imposition of the Harboring and Information Collection Conditions Violates the Spending Clause.

49. In addition to these problems, the Harboring condition is extraordinarily broad, and Defendant has therefore exceeded his authority under the Spending Clause of the Constitution in imposing it on the State. The Harboring condition commands that "no public disclosure may be made of any federal law enforcement information in a direct or indirect attempt to conceal, harbor, or shield from detection" fugitives from justice or aliens illegally in the United States. The condition fails to state which entities or officials must refrain from such comment, nor does it define what an "indirect attempt to conceal, harbor, or shield from detection" might be. The condition goes on to define other terms broadly, stating that "federal law enforcement information" means "law enforcement sensitive information"—which in turn means "records or information compiled for any law enforcement purpose" that are "communicated or made available" by the federal government to any state or local government entity, agency, or official through a variety of means. The condition does not define "law enforcement purpose" or "information"; it does not limit "communicated or made available" to information *directly* communicated or made available; nor does it limit the scope of "information" with such qualifiers as "confidential" or "nonpublic." In short, any public comment from a State official that references any federal law enforcement information could conceivably fall under this restriction and thus serve as grounds to revoke the State's 2018 Byrne JAG award.

50. The Information Collection condition is similarly unrelated to the federal interests undergirding the Byrne JAG program. It requires the State to seek information from its 2018 Byrne JAG subrecipients about their compliance with 8 U.S.C. § 1373, a statute concerning communication about immigration and citizenship status—and not with any federal interests in criminal justice, the area at the core of the Byrne JAG statutes. Like the Notice, Access, and 1373

and 1644 Compliance conditions, the Information Collection condition is yet another way for Defendant to impose immigration enforcement duties upon state and local authorities that are statutorily entitled to 2018 Byrne JAG funds for essential law enforcement duties and programs.

51.     Finally, even if Section 1373, Section 1644, and all of Defendant's immigration-related conditions on the State's 2018 Byrne JAG funds were valid, there is no conflict between the Illinois TRUST Act and any federal law—including 8 U.S.C. §§ 1373 and 1644. The TRUST Act does not place any restriction on sharing the only topic of information that Section 1373 covers: "the citizenship or immigration status, lawful or unlawful, of any individual." *E.g.*, 8 U.S.C. § 1373(a). To the contrary, the Trust Act explicitly states that it "shall not be construed to prohibit or restrict any entity from sending to, or receiving from" any government entity "information regarding the citizenship or immigration status of any individual under Sections 1373 and 1644 of Title 8 of the United States Code." 5 ILCS 805/5. As multiple courts have found, the words "citizenship or immigration status" in Section 1373 cannot be extended to encompass release dates or other information unrelated to a person's actual immigration status or citizenship. *See, e.g.*, *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019) (disagreeing that "§ 1373 actually applies to more information than just immigration status"); *City and County of San Francisco v. Sessions*, 349 F. Supp. 3d at 965–68 (agreeing with courts in collected cases concluding that "Section 1373 would support only a narrow interpretation that extends to information strictly pertaining to immigration status (i.e. what one's immigration status is").

## CLAIMS

### Count I: Declaratory Judgment

52.     The State incorporates by reference the allegations of paragraphs 1 through 51.

53.     An actual controversy exists as to whether the State satisfies the 1373 and 1644 Compliance conditions Defendant has attached to receipt of 2018 Byrne JAG funds. Defendant's agents have indicated that they have determined or will determine that there is a conflict between the Illinois TRUST Act and 8 U.S.C. § 1373, and that the State therefore does not satisfy the 1373 and 1644 Compliance conditions. To date, they have not definitively stated whether they accept the State's construction of the TRUST Act's terms. Accordingly, the State has a credible fear that Defendant, as a result of this determination, will withhold or seek to rescind the State's 2018 Byrne JAG funds.

54.     In truth, there is no conflict between the Illinois TRUST Act and 8 U.S.C. §§ 1373 or 1644. Sections 1373 and 1644 prohibit restrictions on the sharing, receiving, requesting, and maintaining of citizenship and immigration status information. They do not prohibit restrictions on complying with immigration detainers and non-judicial immigration warrants, which is all the TRUST Act concerns. The TRUST Act expressly provides that it shall not be construed to restrict or prohibit any communications between state law enforcement officials and federal immigration authorities. Defendant therefore lacks any basis to determine that the State does not satisfy the 1373 and 1644 Compliance conditions.

55.     Pursuant to 28 U.S.C. § 2201, the State is entitled to a declaration that the Illinois TRUST Act complies with 8 U.S.C. §§ 1373 and 1644, that the Illinois TRUST Act does not provide a basis for withholding or terminating any of the State's Byrne JAG funding, and that

23

Illinois satisfies the 1373 and 1644 Compliance conditions imposed by Defendant on recipients of 2018 Byrne JAG funds.

## Count II: Ultra Vires

56.     The State incorporates by reference the allegations of paragraphs 1 through 55.

57.     Defendant may exercise only that power authoritatively prescribed by Congress.

58.     As to the 1373 and 1644 Compliance conditions, Defendant may not lawfully demand that Illinois comply with 8 U.S.C. §§ 1373 or 1644 as a condition for receiving Byrne JAG funds because Sections 1373 and 1644 are unconstitutional. The Byrne JAG statute sanctions only the imposition of "applicable" federal laws; as unconstitutional laws, Sections 1373 and 1644 do not fall within that category. Therefore, Defendant has no authority to demand compliance with Sections 1373 or 1644 under the Byrne JAG statute.

59.     In addition, Defendant may not lawfully demand that Illinois comply with 8 U.S.C. §§ 1373 or 1644 as a condition for receiving Byrne JAG funds because the text, history, and structure of 34 U.S.C. § 10153—which appears in a section of the Byrne JAG statute enumerating the responsibilities of grant recipients, and authorizes the United States Attorney General to require applicants to certify compliance "with all provisions of this part and all other applicable Federal laws," 34 U.S.C. § 10153(a)(5)(D)—establishes that "applicable Federal laws" refers only to the body of laws that by their express text apply to federal grants. Sections 1373 and 1644 concern only information sharing with federal authorities, contain no limits on the use of federal funds, and are textually unconnected to the Byrne JAG program. Thus, Sections 1373 and 1644 are not "applicable" laws within the meaning of 34 U.S.C. § 10153(a)(5)(D).

60.     For the same reasons, Defendant may not lawfully demand that the State collect information from its 2018 Byrne JAG subrecipients about their compliance with 8 U.S.C. § 1373.

61.     As to the Access and Notice Conditions, Defendant is required by law to distribute Byrne JAG funds to the State. Neither the Byrne JAG statute nor any other provision of law contains authority for Defendant to impose additional substantive conditions like the Access and Notice Conditions. For the reasons set forth by the Seventh Circuit in *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018), the Access and Notice Conditions unlawfully exceed Defendant's powers and intrude upon the powers of Congress.

62.     In addition, the 1373 Compliance, 1644 Compliance, Access, Notice, Harboring, and Information Collection conditions are invalid under 34 U.S.C. § 10228(a), which prohibits Executive Branch officials from using law enforcement grants to exert "any direction, supervision, or control" over any state or local police force or criminal justice agency.

63.     The Constitution vests the spending power in Congress, not the President. The President does not have unilateral authority to refuse to spend funds that have already been appropriated by Congress for a particular project or program. Imposing a new condition on a federal grant program amounts to refusing to spend money appropriated by Congress unless that condition is satisfied.

64.     The Access, Notice, Harboring, and Information Collection conditions were imposed not by Congress but by Defendant in issuing conditions on the State's 2018 Byrne JAG award. Therefore, these conditions amount to an improper usurpation of Congress's spending power by the executive branch.

65.     Pursuant to 28 U.S.C. § 2201, the State is entitled to a declaration that the 1373 Compliance, 1644 Compliance, Access, Notice, Harboring, and Information Collection conditions are *ultra vires* and unconstitutional, that these conditions do not provide a basis for withholding or

terminating any of the State's federal funding, and that Defendant may not impose these conditions to withhold the State's 2018 Byrne JAG funds.

## Count III: Violation of the Spending Clause

66.     The State incorporates by reference the allegations of paragraphs 1 through 65.

67.     Congress's spending power under the Spending Clause, Art. I, § 8, cl. 1, is not unlimited. When Congress desires to condition the states' receipt of federal funds, it must do so unambiguously to enable the states to exercise their choice knowingly, cognizant of the consequences of their participation. In addition, any condition that Congress imposes must be related to the federal interest in the particular national projects or programs.

68.     The 1373 Compliance, 1644 Compliance, Access, Notice, Harboring and Information Collection conditions are ambiguous because they do not provide the State with notice to make a choice knowingly, cognizant of the consequences of its participation. These conditions are also unrelated to the federal interest in particular national projects or programs for which Congress intended Byrne JAG funds to be used. In particular, the immigration objectives reflected in the conditions are not germane to the functions of local law enforcement.

69.     Pursuant to 28 U.S.C. § 2201, Illinois is entitled to a declaration that the 1373 Compliance, 1644 Compliance, Access, Notice, Harboring, and Information Collection conditions are unconstitutional and unlawful, that these conditions do not provide a basis for withholding or terminating any of the State's federal funding, and that Defendant may not impose or threaten to impose these conditions to withhold the State's 2018 Byrne JAG funds.

## Count IV: Violation of the Administrative Procedure Act

70.     The State incorporates by reference the allegations of paragraphs 1 through 69.

71. Pursuant to the Administrative Procedure Act, the courts must hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). The courts must hold unlawful and set aside agency action, findings, and conclusions found to be contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights. *Id.* § 706(2)(B) & (C).

72. Defendant's imposition of the 1373 Compliance, 1644 Compliance, Access, Notice, Harboring, and Information Collection conditions on the State is arbitrary and capricious because it relies on factors Congress did not intend and fails to rely on reasoned decisionmaking.

73. In addition, Defendant's imposition of the 1373 Compliance, 1644 Compliance, Access, Notice, Harboring, and Information Collection conditions on the State is unconstitutional and unlawful for the reasons set forth in this complaint.

74. Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, the State is entitled to a declaration that the 1373 Compliance, 1644 Compliance, Access, Notice, Harboring, and Information Collection conditions violate the Administrative Procedure Act, that these conditions do not provide a basis for withholding or terminating any of the State's federal funding, and that Defendant may not withhold or threaten to rescind the State's 2018 Byrne JAG funds on the basis of these conditions.

**Count V: Violation of the Tenth Amendment**

75. The State incorporates by reference the allegations of paragraphs 1 through 74.

76. The Tenth Amendment prohibits the federal government from requiring state and local governments to govern according to Congress's instructions or from commandeering state officials to administer or enforce a federal regulatory program. This anti-commandeering principle

27

also forbids Congress from unequivocally dictating what a state legislature may and may not do—a direct affront to state sovereignty.

77. Relying on 8 U.S.C. § 1324(a) to justify the Harboring condition, Defendant attempts to commandeer the State and its political subdivisions by directing how their personnel act and handle information under state and local control in order to advance a federal program. The Harboring condition issues a direct order to the State's agencies and officials by prohibiting them from public comment of any kind on any law enforcement operation, subject to Defendant's interpretation of broad, vague terminology. This interference violates the Tenth Amendment, and the State cannot be required to comply with an unconstitutional condition. Defendant may not impose the Harboring condition on the State.

78. The Access and Notice Conditions also commandeer the State and its political subdivisions contrary to the Tenth Amendment. The Access Condition requires a fundamental restructuring of State facilities' procedures and functions in order to accommodate on-demand access to their detainees for federal immigration authorities. The Notice Condition requires a fundamental restructuring of the manner in which the State has chosen to balance Fourth Amendment considerations against its interest in effective law enforcement. Accordingly, Defendant may not impose either the Access or Notice Conditions on the State.

79. As this Court has already declared, 8 U.S.C. § 1373 is facially unconstitutional because they violate the anti-commandeering principle of the Tenth Amendment. 8 U.S.C. § 1644 is unconstitutional for the same reason, as it is identical to 8 U.S.C. § 1373(b)(1). Both laws attempt to commandeer the State and its political subdivisions by directing how their personnel act and handle data under state and local control in order to advance a federal program. Both laws issue direct orders to state legislatures by prohibiting them from enacting statutes concerning the

28

sharing of immigration status information. Both laws also directly inject the federal government into state government affairs by dictating what measures state law enforcement entities and officials must not take concerning immigration enforcement. This interference violates the Tenth Amendment, and the State cannot be required to comply with unconstitutional statutes. Accordingly, Defendant may not impose the 1373 or 1644 Compliance conditions on the State.

80. Pursuant to 28 U.S.C. § 2201, the State is entitled to a declaration that the Harboring, Notice, Access, 1373 Compliance, and 1644 Compliance conditions are unconstitutional and unlawful, that these conditions do not provide a basis for withholding or terminating any of the State's federal funding, and that Defendant may not impose these conditions to withhold the State's 2018 Byrne JAG funds.

## Count VII: Mandamus

81. The State incorporates by reference the allegations of paragraphs 1 through 80.

82. Pursuant to Part A, Subchapter V, Chapter 101, Subtitle 1, of Title 34 of the United States Code, the State has a clear right to receive from Defendant—and Defendant has a nondiscretionary duty to provide to the State—a Byrne JAG award notification that does not contain any unconstitutional or unlawful conditions. No other adequate remedy is available to the State.

83. Pursuant to 28 U.S.C. § 1361, this Court has the authority to issue a writ of mandamus compelling Defendant to perform his duty to provide the State a Byrne JAG award notification that does not contain any unconstitutional or unlawful conditions.

## PRAYER FOR RELIEF

WHEREFORE, the State of Illinois, by Kwame Raoul, the Attorney General of Illinois, prays that this Court:

A.      Declare that the Illinois TRUST Act does not provide a basis for withholding or terminating any of the State's Byrne JAG funding and that the State satisfies the Compliance condition;

B.      Declare that 8 U.S.C. §§ 1373 and 1644 are unconstitutional for violation of the Tenth Amendment;

C.      Declare that Defendant's imposition of the Compliance, Access, Notice, Harboring, and Information Collection conditions is *ultra vires*;

D.      Declare that Defendant's imposition of the Compliance, Access, Notice, Harboring, and Information Collection conditions is unconstitutional for violation of the Spending Clause;

E.      Declare that Defendant's imposition of the Compliance, Access, Notice, Harboring, and Information Collection conditions is unlawful for violation of the Administrative Procedure Act;

F.      Declare that Defendant's imposition of the Access, Notice, and Harboring conditions is unconstitutional for violation of the Tenth Amendment;

G.      Schedule a speedy hearing on the State's prayer for declaratory relief as permitted by Federal Rule of Civil Procedure 57;

H.      Enjoin Defendant from enforcing the Compliance, Access, Notice, Harboring, and Information Collection conditions with respect to 2018 Byrne JAG funds and retain jurisdiction to monitor Defendant's compliance;

I.      Issue a writ of mandamus compelling Defendant to immediately withdraw its "Special Notice Re: FY 2018 Byrne JAG award conditions 41-43 and 45-47" to the State of Illinois and immediately disburse the State's 2018 Byrne JAG award without further delay; and

J.      Award costs and grant such other relief as this Court may deem just and proper.

Dated: May 23, 2019                      Respectfully submitted,

KWAME RAOUL,
Attorney General of Illinois

/s/ Jeff VanDam

Darren Kinkead
Jeff VanDam
Assistant Attorneys General
100 W. Randolph St., 11th Fl.
Chicago, IL 60601
(312) 814-1188
dkinkead@atg.state.il.us
jvandam@atg.state.il.us

*Attorneys for Plaintiff*